PEOPLE v SWARTZ

Docket No. 89355. Submitted March 4, 1987, at Lansing. Decided September 8, 1988.

William Lee Swartz was convicted of first-degree criminal sexual conduct, Chippewa Circuit Court, Nicholas J. Lambros, J. Defendant appealed, alleging error in the prosecutor's arguments to the jury, in allowing the examining physician to testify as an expert witness, in the denial of his motion for a directed verdict on a charge of assault with intent to murder and in inaccuracies in his presentence report.

The Court of Appeals *held:*

1. Since defendant did not object to the alleged prejudicial remarks at trial, review is precluded unless the prejudicial effect could not have been cured by a cautionary instruction and failure to consider the issue would result in a miscarriage of justice. Under this standard, the Court found no grounds for reversal.

2. A trial court's determination that a witness may testify as an expert will be reversed on appeal only where there has been an abuse of discretion. The court acted properly in concluding that the examining physician was qualified to testify as an expert witness, in allowing the doctor to give his medical opinion of the victim's physical condition based upon his examination, including his observations of her mental condition, and in allowing him to testify as to his opinion that the victim had been sexually assaulted.

3. The court erred in refusing to direct a verdict on the assault with intent to murder charge, on which there was insufficient evidence to convict. However, reversal was not

REFERENCES

Am Jur 2d, Appeal and Error §§ 600 *et seq.,* 624-627, 797 *et seq.*
Am Jur 2d, Criminal Law §§ 525 *et seq.*
Am Jur 2d, Expert and Opinion Evidence §§ 103 *et seq.*
Am Jur 2d, Rape §§ 89, 90.
Am Jur 2d, Trial §§ 218 *et seq.,* 548 *et seq.*
Propriety and prejudicial affect of prosecutor's argument to jury indicating his belief or knowledge as to guilt of accused—modern cases. 88 ALR3d 449.

required because the conviction was under a second, separate count.

4. While the court indicated that it did not consider the allegedly erroneous information in the presentence report, the information was not stricken. Under these circumstances, defendant was entitled to have the information stricken.

Affirmed, but remanded for correction of presentence report.

1. CRIMINAL LAW — PROSECUTORIAL COMMENT — APPEAL — PRESERVING QUESTION.

Appellate review of a prosecutor's remarks during trial is precluded where the defense fails to object unless the prejudicial effect could not have been cured by a cautionary instruction and failure to consider the issue would result in a miscarriage of justice.

2. CRIMINAL LAW — PROSECUTORIAL COMMENT.

The prosecutor may not attempt to place the prestige of his office behind a contention that the defendant is guilty, but he may argue that the evidence shows that the defendant is guilty.

3. CRIMINAL LAW — PROSECUTORIAL COMMENT — PERSONAL OPINION.

In cases presenting no close factual issue, the prejudicial impact of expressions of personal opinion by the prosecutor can be countered by an instruction from the bench.

4. CRIMINAL LAW — PROSECUTORIAL COMMENT — CIVIC DUTY.

It is error for a prosecutor to suggest that a jury should convict on the basis of civic duty or suggest that the jury should decide the case on other than the evidence itself; reversal is not mandated on the basis of prosecutorial remarks suggesting that the jury should convict out of a sense of civic duty where the evidence is overwhelming and no specific objection on that basis was made by defense counsel at trial.

5. WITNESSES — EXPERT WITNESSES — APPEAL — RULES OF EVIDENCE.

A trial court's determination that a witness may testify as an expert will be reversed on appeal only where there has been an abuse of discretion (MRE 702).

6. APPEAL — EVIDENCE — PRESERVING QUESTION.

An objection to the admission of evidence on a basis not raised in the trial court will not be heard for the first time on appeal absent a showing of manifest injustice.

7. RAPE — EXAMINING PHYSICIANS — EXPERT WITNESSES.

The examining physician in a rape case is a proper witness as long as his testimony may assist the jury in its determination

of the existence of either of two crucial elements of the offense charged, penetration itself and penetration against the will of the victim.

8. CRIMINAL LAW — DIRECTED VERDICT.

It is error for a trial judge to refuse to direct a verdict of acquittal on any charge where the prosecution has failed to present evidence from which the jury could find all elements of the crime charged; however, the erroneous denial of a directed verdict on a principal charge does not require reversal where the jury was instructed upon and acquitted the defendant of all possible offenses under the principal charge and where the evidence clearly supported the defendant's conviction under a second count.

9. CRIMINAL LAW — SENTENCING — PRESENTENCE REPORT.

A sentencing court has discretion to sentence a defendant without taking into consideration information contained in the presentence report to which the defendant has objected on the basis of inaccuracy; in doing so, however, the court does not thereby prevent potentially false information from being transmitted to the Department of Corrections and, therefore, the defendant is entitled to have that information stricken from the presentence report.

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, *Patrick M. Shannon*, Prosecuting Attorney, and *Raymond O. Howd*, Assistant Attorney General, for the people.

State Appellate Defender (by *P. E. Bennett*), for defendant on appeal.

Before: HOOD, P.J., and HOLBROOK, JR., and M. R. STEMPIEN,* JJ.

PER CURIAM. Defendant appeals as of right from his September 19, 1985, conviction in the Chippewa Circuit Court of first-degree criminal sexual conduct, MCL 750.520b(1)(e); MSA 28.788(2)(1)(e). Defendant further asks this Court to remand his case to the circuit court for the purpose of correct-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ing inaccuracies in his presentence report. We affirm defendant's conviction and remand to the circuit court for correction of the presentence report.

Defendant was convicted of the October 25, 1984, sexual assault of a female corrections officer at the Kinross Correctional Facility, where defendant was an inmate. The victim testified that defendant grabbed her from behind as she was leaving a staff bathroom, held a putty knife to her throat, and forced her back into the bathroom. Defendant turned off the bathroom light and told the victim that he wanted to talk to her; he also told her to take off her jacket and slacks. When the victim could not remove her slacks because they would not slide over her shoes, defendant removed them, and sexually assaulted her. After the assault, defendant told the victim that he would turn himself in.

Defendant testified that he had been depressed and lonely on the date of the incident and had grabbed the victim because he wanted to talk to her. When he was in the bathroom with her, he pulled her pants down because he did not want her to get away. The victim told defendant that she was going to vomit, so defendant told her to bend over and put her head between her legs. She then fell on the floor and started sobbing. At this point, defendant testified, he left the bathroom. He did not recall having sexual relations with the victim and testified that he did not have the intent to harm or murder the victim.

On the night of the incident, the victim was examined by Dr. Blake Slater, a general practitioner at the War Memorial Hospital. Dr. Slater used a sexual assault kit. He took some vaginal smears which indicated that there was motile sperm in the vaginal vault. Dr. Slater also noted a

red area on the victim's neck. He testified that, based upon his total examination of the victim, he believed that she had been sexually assaulted.

The sexual assault kit was analyzed by Dennis Mapes, a crime laboratory scientist with the Michigan State Police. He testified that he found semen on the vaginal swabs taken from the victim and on her underpants.

In addition to first-degree criminal sexual conduct, defendant had been charged with assault with intent to commit murder. After the prosecution rested its case, defendant moved the court for a directed verdict on the count of assault with intent to commit murder, asserting that no evidence had been presented that he had an actual intent to kill. The circuit judge denied defendant's motion.

The jury was instructed on first-degree criminal sexual conduct and lesser-included offenses, and assault with intent to commit murder and lesser-included offenses. The circuit court instructed the jury to return only one verdict on the charges. The jury's verdict was guilty as to first-degree criminal sexual conduct. Defendant received a sentence of life imprisonment to be served consecutive to the term he had been serving.

Defendant argues that he should receive a new trial, claiming the following errors: (1) Although defense counsel did not object at trial, defendant asserts that he was denied a fair trial because the prosecutor injected impermissible arguments into his opening and closing statements. (2) Defendant contends that the trial judge erroneously permitted Dr. Slater to testify as an expert witness. (3) Defendant contends that the trial judge erroneously denied his motion for a directed verdict on the charge of assault with the intent to commit murder.

Additionally, defendant requests that his case be remanded to correct inaccuracies in his presentence report.[1]

I

Defendant argues that the prosecutor injected several types of impermissible arguments into his opening and closing statements at trial. First, defendant asserts that the prosecutor injected his personal opinion about defendant's guilt. Second, the prosecutor is said to have appealed to the jury to sympathize with the victim. Finally, defendant maintains that the prosecutor relied on a "civic duty" argument.

Where defense counsel fails to object to the prosecutor's remarks during trial, appellate review is precluded unless the prejudicial effect could not have been cured by a cautionary instruction and failure to consider the issue would result in a miscarriage of justice. *People v Jansson,* 116 Mich App 674; 323 NW2d 508 (1982). Applying this standard in the instant case, we find no grounds for reversal based upon the prosecutor's remarks in his opening and closing statements.

Defendant maintains that the following were improper statements of personal opinion which suggested to the jury that the prosecutor's office had already determined defendant's guilt:

> (a) I have my scheme of looking at things, and I feel that this is probably one of the most serious [criminal cases] that I have ever prosecuted. [From opening statement.]

[1] We note that defendant raises in a footnote to his brief on appeal the claim of ineffective assistance of counsel based on defense counsel's failure to object to the prosecutor's remarks. We do not consider this issue because defendant did not state it as a question involved pursuant to MCR 7.212(C)(4).

(b) This is as serious a case as you will ever see or ever hear. [From opening statement.]

(c) I'm certain—certain that you will feel the same way I do, that in fact a criminal sexual conduct in the first degree with the use of a knife occurred, and that also this defendant assaulted this woman with the intent to commit murder. [From opening statement.]

(d) I am assured that at the end of the evidence in this particular case you will feel the same way that I do. [From opening statement.]

(e) I take a strong line on these type[s] of cases. [From opening statement.]

(f) I—my personal feeling is that this is an extremely assaultive situation, and that it is not entitled, or the defendant is not entitled to anything less [than first degree criminal sexual conduct or assault with intent to commit murder]. That type of activity cannot be tolerated. [From closing argument.]

We find that remarks (a) and (b), *supra,* were not improper statements of personal opinion because they did not express an opinion about defendant's guilt or innocence. These remarks concerned the serious nature of the charges brought against defendant.

Remarks (c) and (d), *supra,* are also not improper. The prosecutor's remarks must be read as a whole. *People v Porterfield,* 128 Mich App 35; 339 NW2d 683 (1983), lv den 419 Mich 854 (1984); *People v Cowell,* 44 Mich App 623; 205 NW2d 600 (1973). While the prosecutor may not place the prestige of his office behind the assertion that the defendant is guilty, he may argue that the evidence establishes defendant's guilt. Where the

prosecutor's argument is based upon the evidence and does not suggest that the jury decide the case on the authority of the prosecutor's office, the words "I believe" or "I want you to convict" are not improper. *People v Jansson, supra,* 116 Mich App 693-694, citing *People v Yearrell,* 101 Mich App 164; 300 NW2d 483 (1980).

Reading remarks (c) and (d), *supra,* in context, we characterize them as the prosecutor's statement of what he expected the evidence to show at trial. Defendant's excerpted remark (c), *supra,* fails to include the sentence which follows, namely, "And I feel that [way] because of the evidence in this particular case." Remark (d), *supra,* even in its excerpted form, refers to the evidence as the basis for the prosecutor's feeling. Accordingly, we hold that remarks (c) and (d) were not impermissible.

Remarks (e) and (f) are arguably expressions of the prosecutor's personal beliefs. However, we do not find them so prejudicial that their effect could not have been cured by a cautionary instruction. Defendant is incorrect in his reliance on *People v Humphreys,* 24 Mich App 411; 180 NW2d 328 (1970), to support the contention that the prosecutor's remarks denied him a fair trial. In *People v Humphreys,* this Court reversed the defendant's conviction and ordered a new trial, holding that, because the case involved a close question of fact, there was no certainty that an instruction could have cured the prejudicial effect of the prosecutor's statement of personal opinion. 24 Mich App 419. The instant case is distinguishable from *People v Humphreys* because it presents no close factual issue. The testimony of two medical experts, defendant, the victim and other prison personnel supply ample evidence that the defendant had sexually assaulted the victim. In cases pre-

senting no close factual issue, "the prejudicial impact of [expressions of personal opinion] can be countered by an instruction from the bench, and therefore there is no need for a new trial . . . if the court instructs the jury to disregard the remark." 24 Mich App 414.

Defendant cites the following remarks as improper appeals to the jury to sympathize with the victim:

> (g) I will call the victim as a witness. To let you understand what she has gone through and what she went through almost a year ago, and what she is continuing to go through since that time. This is a mother of a seven-year-old child who is working at the prison, trying to support the family, and then to walk into a situation like she did and to be raped. This is as serious a case as you will ever see or ever hear. It is as assaultive as any case you will ever see or ever hear, and there was something taken from this woman that will never be returned, and it was taken at knife point. [From opening statement.]

> (h) She had to come here on the last two days and bare her soul to you. Don't—please don't forget that when you go back into that jury room. [From closing argument.]

> (i) As I have already mentioned, [the victim] is not done. She is done testifying, but something happened to her, and she was raped about a year ago at the Kinross Correctional Facility, and you and I will maybe walk out of here today and leave this behind us. Not her. That is something she is going to carry forever. [From closing argument.]

Remarks (g), (h), and (i), *supra,* do appear to be improper appeals to the jury for sympathy. See *People v Wise,* 134 Mich App 82; 351 NW2d 255 (1984), lv den 422 Mich 852 (1985). However, we do

not find them to be grounds for a new trial because their prejudicial effect could have been cured with a timely requested cautionary instruction. See *People v Humphreys, supra; People v Jansson, supra.*

Defendant challenges the following remarks as impermissible "civic duty" arguments:

(j) We do not in this county see too much of this type of crime. [From opening statement.]

(k) I hope you agree that this type of activity in this particular county, no matter where it occurs, inside a prison, outside a prison, wherever, should not be tolerated. [From opening statement.]

(l) I am asking you, don't bargain this thing. This is much too serious . . . . That type of activity cannot be tolerated. [From closing argument.]

(m) I am asking you, stick with it, hang in there on either one of the two charges . . . . Don't let this one slip by. [From closing argument.]

Remarks (j) through (m) do appear to be improper "civic duty" arguments. See *People v Wright (On Remand),* 99 Mich App 801, 809; 298 NW2d 857 (1980), lv den 410 Mich 854 (1980). However, in *People v Eaton,* 114 Mich App 330, 335; 319 NW2d 344 (1982), lv den 417 Mich 929 (1983), this Court held that, where a defendant failed to raise a timely objection and there was overwhelming evidence of defendant's guilt, it would not conclude that the prosecutor's improper "civic duty" argument deprived defendant of a fair trial. See also *People v Lawless,* 136 Mich App 628, 634; 357 NW2d 724 (1984), lv den 422 Mich 881 (1985). Accordingly, we do not find remarks (j) through (m) to be grounds for reversal because

defendant failed to timely object, and there was considerable evidence of defendant's guilt.

II

Defendant maintains that the circuit court committed error requiring reversal when it refused to sustain his objection to the qualification of Dr. Blake Slater, the victim's treating physician, as an expert witness. Defendant objected to Dr. Slater's qualification on the basis of Dr. Slater's testimony that he had no field of specialty and had neither used a sexual assault kit nor been involved in a sexual assault examination prior to the night he examined the victim.[2]

A trial court's determination that a witness may testify as an expert will be reversed on appeal only where there has been an abuse of discretion. *People v Boyd,* 65 Mich App 11; 236 NW2d 744 (1975). We hold that the circuit court did not abuse its discretion in allowing Dr. Slater to testify as an expert.

MRE 702 provides as follows for the admission of expert testimony:

> If the court determines that recognized scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, *a witness qualified as an expert by knowledge, skill, experience, training, or education,* may testify thereto in the form of an opinion or otherwise. [Emphasis added.]

We hold that Dr. Slater was qualified to testify

---

[2] We note that defendant asserts in his brief that Dr. Slater did not have adequate training and experience in evaluating the results of the sexual assault kit. The record below shows that Dr. Slater did not evaluate the results of the kit. He took his own vaginal swabs to detect sperm. The results of the kit were evaluated by Dennis Mapes, a crime laboratory scientist with the Michigan State Police.

as an expert witness under MRE 702. In *People v Thacker,* 108 Mich 652; 66 NW 562 (1896), a medical doctor called to testify had studied medicine for four years prior to graduating from medical school and had spent one year practicing medicine in a Detroit hospital. He had attended the victim in the case during her last illness and testified to her condition. The doctor was asked whether he had seen any evidence leading him to believe that the victim had been poisoned. Defendant objected that the doctor was incompetent to testify because he had never treated a person who had been poisoned and had never seen one treated by another physician. The trial court overruled the objection, and our Supreme Court affirmed its decision, as follows:

> Does it not follow, logically, that if the witness has given the subject of poisons such careful and discriminating study, by reading the literature of the subject, and listening to the lectures of instructors who have made a specialty of the subject, that his study has resulted in the formation of a definite opinion, that he may express it, and that, when expressed, it may be considered by the jury? We think so, and the jury should give the opinion so expressed just such weight as, in view of all the testimony, they think it is entitled to. No error was committed in the admission of the testimony of the medical witness. [108 Mich 661.]

Like the doctor in *People v Thacker,* Dr. Slater had never examined a sexual assault victim prior to the victim in this case. However, he had studied medicine, graduated from medical school and was licensed to practice medicine in Michigan. He had attended a lecture in medical school partially devoted to the examination of sexual assault victims. Moreover, he had experience in examining sperm

in infertility cases. This Court finds that Dr. Slater's education resulted in the formation of a definite opinion which was properly put before the jury. The jurors gave Dr. Slater's opinion as much weight as they felt it deserved. Accordingly, we find that the circuit court committed no error in allowing Dr. Slater to testify as an expert.

Defendant further asserts that Dr. Slater was improperly allowed to interpret the victim's emotional state without being qualified to do so. This Court finds that Dr. Slater did not interpret the victim's emotional state; rather, he gave his medical opinion of her physical condition based upon his total examination, which included his observations of her mental state.

Finally, defendant argues for the first time on appeal that Dr. Slater improperly bolstered the victim's credibility by testifying to his belief that she had been sexually assaulted. Where defendant failed to object to Dr. Slater's testimony at trial, appellate review is precluded unless there is a showing of manifest injustice. *People v Federico,* 146 Mich App 776, 791; 381 NW2d 819 (1985), lv den 425 Mich 867 (1986); *City of Warren v Maccabees Mutual Life Ins Co,* 83 Mich App 310; 268 NW2d 390 (1978), lv den 405 Mich 845 (1979).

We find no manifest injustice in the instant case because Dr. Slater's opinion that the victim had been sexually assaulted was admissible. In *People v Smith,* heard together with *People v Mays,* 425 Mich 98; 387 NW2d 814 (1986), our Supreme Court reviewed sexual assault cases in which expert testimony has been at issue, and held:

"[T]he examining physician in a rape case is a proper witness *as long as his testimony may assist the jury* in their determination of the existence of either of two crucial elements of the offense

charged, (1) penetration itself and (2) penetration against the will of the the victim." [*People v McGillen #2*, 392 Mich 278, 284; 220 NW2d 689 (1974).] [*Smith, supra*, 425 Mich 107. Emphasis in *Smith*.]

In *People v Smith*, the Supreme Court determined that it was error to admit the examining physician's opinion that the complainant had been sexually assaulted. The opinion was based on the history and emotional state of the complainant rather than on findings within the realm of the physician's medical capabilities or expertise as an obstetrician and gynecologist. The physician's opinion was thus an inadmissible lay witness opinion on the believability of the complainant's story. There was no indication that the physician possessed specialized knowledge which would have enabled him to draw inferences from the complainant's emotional state. 425 Mich 112-113.

In *People v Mays*, the doctor testified to his opinion that the complainant had been penetrated against her will. The Supreme Court ruled that the doctor's opinion on forcible penetration was proper so long as it was based upon objective evidence. 425 Mich 114-115.

The instant case is more akin to *Mays* than *Smith*. Dr. Slater conducted a physical examination of the victim. On cross-examination, he testified that his opinion was based upon what he observed medically. Although his observation of the victim's emotional state was part of his medical evaluation, Dr. Slater did not base his opinion on the victim's emotional state. Dr. Slater's opinion was based on objective facts obtained from his medical examination of the victim, such as the red mark on her neck and motile sperm in her body. His testimony was therefore admissible to assist

the jury in its determination of penetration or penetration against the will of the victim.

### III

Defendant's final basis for seeking a new trial is that the circuit court erred in denying his motion for a directed verdict on the charge of assault with intent to commit murder. Defendant argues that there was insufficient evidence on the element of intent to kill to put the charge before the jury and that the court's error created the likelihood of a compromise verdict.

We agree that there was insufficient evidence of intent to kill to support the finding of a rational trier of fact that the crime of assault with intent to commit murder had been proven beyond a reasonable doubt. See *People v Brown,* 137 Mich App 396, 407; 358 NW2d 592 (1984), lv den 424 Mich 907 (1986), citing *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979), cert den 449 US 885; 101 S Ct 239; 66 L Ed 2d 110 (1980). The victim testified that defendant had a putty knife in his hand prior to the sexual assault but that she did not know if it was in his hand during the sexual assault. Following the assault, defendant immediately reported to another corrections officer and handed him the knife. None of the witnesses testified that defendant verbally threatened to kill the victim. Moreover, the victim's injuries from the knife were minor; Dr. Slater testified that he could only discover a red mark on her neck. Viewed in the light most favorable to the prosecution, the evidence was not sufficient enough that a rational trier of fact could have found the intent to kill proven beyond a reasonable doubt. The circuit court erred in denying defendant's motion for a directed verdict.

However, the circuit court's error does not require reversal. In *People v Doyan,* 116 Mich App 356, 361; 323 NW2d 397 (1982), defendant was charged with two separate counts. Like defendant in the instant case, the defendant in *Doyan* was convicted of a lesser offense under the second count after the trial court erroneously denied his motion for a directed verdict on the first count. This Court refused to hold that the trial court had committed error requiring reversal because the case had gone to the jury for consideration as two separate counts, with instructions that adequately informed the jurors that the two counts were separate. The separate nature of the two counts eliminated the danger that the jury would reach a compromise verdict.

Defendant's reliance on *People v Vail,* 393 Mich 460; 227 NW2d 535 (1975), is misplaced. In *People v Vail,* defendant was charged with first-degree murder and convicted of voluntary manslaughter. Our Supreme Court reversed his conviction because there was insufficient evidence to submit the first-degree murder charge to the jury. The defendant's acquittal of the higher offense did not vitiate the reversible nature of the error because of the likelihood that the jury invalidly compromised its verdict. The instant case is distinguishable from *Vail,* and is similar to *Doyan,* because it involves a verdict with respect to two separate counts rather than a verdict on a lesser included offense. Accordingly, we hold that defendant was not prejudiced by the circuit court's denial of his motion for a directed verdict on the assault with intent to commit murder charge.

Although we affirm defendant's conviction of first-degree criminal sexual conduct, we remand this case to the circuit court for correction of defendant's presentence report in accordance with

MCL 771.14(5); MSA 28.1144(5).[3] Defendant asserts that the following items in the presentence report were inaccurate:

—comments made by Swartz to the probation agent who wrote the report regarding Swartz's version of the offense,

—the inclusion in the report of a prior sexual assault charge that was dismissed,

—the claim that Swartz had five major misconducts while in prison when Swartz claimed only to have four,

—a reference to an unnamed inmate at Kinross Correctional Facility who indicated that Swartz bore [sic] holes through the wall of the staff bathroom,

—errors in Swartz's employment history and his psychological contacts while in prison.

Although the circuit judge explained during sentencing that he had not considered the foregoing items in determining defendant's sentence, these items were never stricken from the presentence report. After sentencing, a postinformation report was prepared which affirmed the information contained in the presentence report.

In *People v Taylor,* 146 Mich App 203; 380 NW2d 47 (1985), defendant challenged the accuracy of information contained in his presentence report. As in the instant case, the sentencing court

---

[3] We note that defendant and the prosecution seek to enlarge the record on appeal by attaching to their respective briefs a copy of the presentence report and postsentence information report. However, we did not locate these reports in the circuit court record. MCR 7.210(A) provides that appeals to this Court are heard on the original record and that the record consists of original papers or a certified copy filed in the lower court, the transcript of any testimony in the case appealed and exhibits which were introduced. Materials outside the scope of the record may not be considered on appeal. *People v Gibbs,* 120 Mich App 485, 491; 328 NW2d 65 (1982); *McDonald v Oberlin,* 127 Mich App 73; 338 NW2d 725 (1983). Fortunately, the reports are not crucial to a determination of the issue.

chose to proceed with sentencing without consider-
ing the challenged information, and did not make
a finding of inaccuracy. This course of action was
within the court's discretion. 146 Mich App 205.
However, when the sentencing court's action did
not prevent potentially false information from
going to the Department of Corrections, this Court
explained the appropriate remedy as follows:

> When a court, for purposes of expediency, effi-
> ciency or otherwise, disregards information chal-
> lenged as inaccurate, the court in effect deter-
> mines that the information is irrelevant to sen-
> tencing. The defendant is therefore entitled to
> have that information stricken. Accordingly, we
> remand for the challenged parts of defendant's
> presentence investigation report to be stricken.
> [*Taylor, supra,* 146 Mich App 205-206.]

Accordingly, we remand this case to the circuit
court so that the challenged parts of defendant's
presentence report may be stricken.

Defendant's conviction is affirmed and the case
is remanded.