*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RONALD JOHNSON,

Defendant-Appellant.

UNPUBLISHED
January 30, 2020

No. 345934
Wayne Circuit Court
LC No. 12-009230-01-FC

Before: BECKERING, P.J., and CAVANAGH and STEPHENS, JJ.

PER CURIAM.

Following a bench trial, defendant was convicted of second-degree murder, MCL 750.317, for which the trial court initially sentenced him to 27 to 50 years' imprisonment. In a prior appeal, this Court affirmed defendant's conviction and sentence. *People v Johnson (On Reconsideration)*, unpublished per curiam opinion of the Court of Appeals, issued November 4, 2014 (Docket No. 315247). Thereafter, in lieu of granting defendant's application for leave to appeal, the Supreme Court reversed in part this Court's judgment, vacated his sentence because of a scoring error, and remanded to the trial court for resentencing. *People v Johnson*, 500 Mich 878 (2016). On remand, the trial court resentenced defendant to a reduced prison term of 20 to 40 years. Defendant again appeals as of right. We affirm defendant's sentence, but remand for the limited purpose of striking certain information from his presentence investigation report.

## I. BACKGROUND

In its prior opinion, this Court provided the following overview of the facts:

On August 1, 2011, defendant stabbed the victim in this case, Daryl Parker, repeatedly in the back and neck with a pocket knife over a dispute involving an air-conditioner. Three days after the incident, police found Parker paralyzed and incapacitated, but still alive, on the second-floor of a home on Warren Avenue. Parker was admitted to a hospital with multiple stab wounds to the back and neck, which involved injury to his spine that resulted in a loss of function to his upper and lower extremities. Parker later died from his injuries and related complications, including multiple organ failure. However, before his

-1-

death, Parker testified at a preliminary examination and identified defendant as the individual who, unprovoked, stabbed him six times in the back and neck. By stipulation of the parties, the prosecution introduced Parker's preliminary examination testimony at defendant's trial.

At trial, defendant testified on his own behalf, admitting that he stabbed Parker but asserting a claim of self-defense. According to defendant, he paid Parker for an air conditioning unit on the day in question, but Parker failed to provide the air conditioner and he also stole defendant's debit card. When defendant returned to retrieve the debit card and procure the air conditioner, Parker struck him in the jaw and head with a steering-wheel lock. Defendant responded by producing a pocket knife, at which time Parker began to choke defendant. Defendant indicated that, while standing face-to-face, he then "tapped" Parker a couple of times on the shoulder with the knife and, when Parker continued to choke him, "one hard time" in the back. When Parker fell to the ground, defendant removed the knife from Parker, and Parker returned his debit card. According to defendant, Parker was "not too injured" and defendant asked someone at a nearby gas station to call an ambulance. Defendant claimed injury to his jaw, but he did not go to a police station to report the incident nor did he seek medical treatment.

Defendant was charged with first-degree premeditated murder, assault with intent to murder, and felonious assault. Following a bench trial, the trial court found defendant guilty of second-degree murder and not guilty of the remaining offenses. The trial court specified that it did "not give credit to a claim of self-defense," noting that defendant did not seek immediate medical attention, defendant was larger than Parker, and that the number and location of stab wounds did not support defendant's version of events. The trial court sentenced defendant to 27 to 50 years' imprisonment. [*Johnson*, unpub op at 1-2.]

## II. DISPROPORTIONATE SENTENCE

Defendant challenges the proportionality of his new sentence of 20 to 40 years. The sentence represents a 30-month *downward* departure from the applicable sentencing guidelines range of 270 to 450 months. We disagree that defendant is again entitled to resentencing.

Preliminarily, defendant notes that MCL 769.34(10) provides that "[i]f a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence." This Court has held that *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), "did not alter or diminish MCL 769.34(10)[.]" *People v Schrauben*, 314 Mich App 181, 196 n 1; 886 NW2d 173 (2016). Defendant asserts that this Court should hold this appeal in abeyance pending our Supreme Court's decision in *People v Ames*, 501 Mich 1026; 908 NW2d 303 (2018), in which the Supreme Court ordered that oral arguments be held to consider "whether MCL 769.34(10)

has been rendered invalid by this Court's decision in . . . *Lockridge*, . . . to the extent that the statute requires the Court of Appeals to affirm sentences that fall within the applicable guidelines range 'absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence.' " The Supreme Court has since denied leave to appeal in that case. *People v Ames*, 504 Mich 899 (2019). In any event, MCL 769.34(10) is not controlling in this case because defendant did not receive a sentence within the sentencing guidelines range.

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *Lockridge*, 498 Mich at 392. When reviewing a departure sentence for reasonableness, we must determine "whether the trial court abused its discretion by violating the 'principle of proportionality' set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), 'which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017); see also *People v Dixon-Bey*, 321 Mich App 490, 521; 909 NW2d 458 (2017).

Although the sentencing guidelines are only advisory, *Lockridge*, 498 Mich at 365, "the guidelines 'remain a highly relevant consideration in a trial court's exercise of sentencing discretion' that trial courts 'must consult' and 'take . . . into account when sentencing.' " *Steanhouse*, 500 Mich at 474-475, quoting *Lockridge*, 498 Mich at 391. "[D]epartures [from the sentencing guidelines range] are appropriate where the guidelines do not adequately account for important factors legitimately considered at sentencing[.]" *Milbourn*, 435 Mich at 657. "The 'key test' is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Steanhouse*, 500 Mich at 472, quoting *Milbourn*, 435 Mich at 661. Factors that may be considered by a trial court under the proportionality standard include, but are not limited to:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Walden*, 319 Mich App 344, 352-353; 901 NW2d 142 (2017) (citation omitted).]

If this Court "determines that [the] trial court has abused its discretion in applying the principle of proportionality by failing to provide adequate reasons for the extent of the departure sentence imposed, it must remand to the trial court for resentencing." *Steanhouse*, 500 Mich at 476.

In this case, the trial court's reasons for departure demonstrate that defendant's 20-year minimum sentence qualifies as proportionate under *Milbourn*, and thus is reasonable under *Lockridge*.[1] At sentencing, before imposing a downward departure sentence, the trial court specifically recognized that the sentencing guidelines are now advisory under *Lockridge*, 498

---

[1] Plaintiff does not contest the reasonableness of defendant's *downward* departure sentence.

Mich at 365, and that the court "has to set a reasonable sentence if it goes outside the guidelines." The trial court provided reasons for the sentence it imposed, including defendant's age, and that defendant had only two nonsignificant misconduct tickets in his nearly eight years of incarceration, which appropriately considers "the defendant's misconduct while in custody," *Walden*, 319 Mich App at 353. Thus, the trial court articulated reasons for departing from the guidelines range (i.e., defendant's conduct while in custody and his age), which also adequately justified the extent of the departure imposed. Notwithstanding defendant's good conduct while in custody, in determining a proportionate sentence, the trial court was also required to consider, as it did, "the severity of the [defendant's] conduct," which it noted caused a person's death. Defendant's mere assertion that the trial court did not "give sufficient credit" to his conduct while in custody as justifying a further reduced minimum sentence is unavailing. Defendant's 20-month minimum sentence does not violate the principle of proportionality, and thus is not unreasonable.

## III. DEFENDANT'S STANDARD 4 BRIEF

In a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, defendant raises additional issues challenging the scoring of certain prior record variables (PRVs) and offense variables (OVs) of the sentencing guidelines, and the accuracy of the presentence investigation report (PSIR). None of these challenges entitle defendant to be resentenced.

## A. THE SCORING OF THE GUIDELINES

When reviewing a trial court's scoring decision, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*.

### 1. PRV 1

PRV 1 is scored for "prior high severity felony convictions," MCL 777.51(1). Consistent with MCL 777.51(c), defendant received a 25-point score for PRV 1 for having one prior high-severity felony conviction, which was for a plea of burglary of a habitation in 1992 in Texas. Defendant contends that this offense would not have qualified as a high-severity felony under the former judicial sentencing guidelines that were in effect at the time he committed the offense in Texas. However, defendant incorrectly asserts that the trial court was required to apply the former judicial sentencing guidelines to determine whether the 1992 Texas conviction could be used to score the legislative guidelines in this case. Although a trial court is required to apply the former judicial sentencing guidelines when sentencing a defendant for an offense committed before January 1, 1999, *People v Reynolds*, 240 Mich App 250, 253; 611 NW2d 316 (2000), the trial court was not sentencing defendant for his 1992 Texas conviction, but rather was sentencing defendant for the instant offense committed in 2011. Therefore, the former judicial guidelines did not apply and the trial court properly applied the legislative guidelines to determine how to score defendant's prior convictions. See MCL 769.34(1) (the judicial guidelines "do not apply to felonies . . . committed on or after January 1, 1999) and (2) (the legislative guidelines apply to

offenses committed after January 1, 1999). Under the legislative sentencing guidelines, for purposes of scoring PRV 1, the statute specifically states that a "prior high severity felony conviction" means a "felony under a law of . . . another state that does not correspond to a crime listed in offense class M2, A, B, C, D, E, F, G, or H and that is punishable by a maximum term of imprisonment of *10 years or more*." MCL 777.51(2)(d)(emphasis added). Defendant does not dispute that his 1992 Texas conviction qualifies as a high-severity felony under this statute. Had the Legislature intended application of the maximum penalty enunciated in MCL 777.51(2)(d) to mirror application of the judicially created rule in the former judicial guidelines, it could have done so. The Legislature is charged with knowledge of existing laws on the same subject and is presumed to have considered the effect of new laws on all existing laws. *People v Ramsdell*, 230 Mich App 386, 393; 585 NW2d 1 (1998). Accordingly, defendant's argument is without merit, and we affirm the trial court's 25-point score for PRV 1.

## 2. PRV 2

In a claim that he relates to the scoring of PRV 1, defendant makes an additional cursory complaint, without any analysis, that because PRV 1 was incorrectly scored, "[s]uch requires that PRV 2 also be rescored at 5 points." "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). "The failure to brief the merits of an allegation of error constitutes an abandonment of the issue." *People v McPherson*, 263 Mich App 124, 136; 687 NW2d 370 (2004). Consequently, this claim has been abandoned. *Id*.

## 3. OV 3

We also reject defendant's claim that the evidence does not support a 25-point score for OV 3 for a life-threatening injury. OV 3 addresses physical injury to a victim, and the trial court must assess 25 points when a "[l]ife threatening or permanent incapacitating injury occurred to a victim[.]" MCL 777.33(1)(c); *People v Houston*, 473 Mich 399, 407; 702 NW2d 530 (2005). A score of 10 points is appropriate if "[b]odily injury requiring medical treatment occurred to a victim." MCL 777.33(1)(d). The statute mandates assessment of "the highest number of points possible." *Houston*, 473 Mich at 402.

The evidence at trial showed that defendant stabbed the victim, Daryl Parker, multiple times in the back and neck, causing paralysis. Parker and a medical examiner testified regarding Parker's injuries, and Parker's medical records were admitted at trial. As the trial court observed, the medical expert's testimony indicated that Parker's cause of death was "multiple stab wounds and complications that arose as a result of those particular stab wounds" and that "the paralysis that was caused as a result of the stab wounds put Mr. Parker in a position where he was much more vulnerable to the notion of pneumonia and other respiratory diseases and afflictions because the paralysis did in fact impact his ability to breathe." The trial court reasonably inferred from the evidence concerning the multiple stab wounds and Parker's resulting paralysis and eventual death that Parker suffered a "[l]ife threatening or permanent incapacitating injury" as a result of being stabbed by defendant. MCL 777.33(1)(c). Further, our Supreme Court has held that 25 points is the correct score for OV 3 if the victim's death resulted

from a crime, and homicide was the sentencing offense, *Houston*, 473 Mich at 407, as occurred here. Accordingly, the evidence supports the trial court's 25-point score for OV 3.

## 4. OV 6

We also reject defendant's claim that, because he only admitted an intent to injure Parker, the evidence does not support a 25-point score for OV 6 for a malicious intent. OV 6 is scored for the offender's intent to kill or injure another person, MCL 777.36, and 25 points must be scored if "[t]he offender had unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result[.]" MCL 777.36(1)(b). Notably, "[t]he sentencing judge shall score this variable consistent with a jury verdict unless the judge has information that was not presented to the jury." MCL 777.36(2)(a). In this case, sitting as the trier of fact at defendant's bench trial, the trial court found defendant guilty of second-degree murder, finding that the evidence indicated that when defendant stabbed Parker, "there was very clearly an intent to at least do great bodily harm," "or that he knowingly created a very high risk of death or great bodily harm, knowing that death or such harm would be the likely result of his action." At defendant's resentencing, the trial court stated that OV 6 was correctly scored at 25 points "because that is consistent with the verdict that was rendered." We agree, and affirm the trial court's 25-point score for OV 6.

## B. ACCURACY OF THE PSIR

We review a trial court's response to a claim of inaccuracies in the PSIR for an abuse of discretion. *People v Uphaus (On Remand)*, 278 Mich App 174, 181; 748 NW2d 899 (2008). "A trial court abuses its discretion when it selects an outcome outside the range of reasonable and principled outcomes." *Id*. At sentencing, either party may challenge the accuracy or relevancy of any information contained in the presentence report. MCL 771.14(6); MCR 6.425(E)(1)(b); *People v Lloyd*, 284 Mich App 703, 705-706; 774 NW2d 347 (2009). If presented with a challenge to the factual accuracy of information, a court has a duty to resolve the challenge. *Uphaus (On Remand)*, 278 Mich App at 182. The information in the report is presumed to be accurate, and the defendant has the burden of going forward with an effective challenge. *Lloyd*, 284 Mich App at 705. Once a defendant effectively challenges a factual assertion, the prosecutor has the burden to prove the fact by a preponderance of the evidence. *Id*. The trial court must allow the parties to be heard and must make a finding as to the challenge, or determine that a finding is unnecessary because the court will not consider it during sentencing. MCR 6.425(E)(2); *People v Waclawski*, 286 Mich App 634, 689-690; 780 NW2d 321 (2009). MCL 771.14(6) requires that inaccurate or irrelevant information be stricken from a PSIR, and, similarly, MCR 6.425(E)(2) requires correction or striking if a challenge is found to be meritorious or if the court decides to disregard the challenged information.

## 1. PRESERVED CLAIM

At the resentencing proceeding, defendant objected to the description that "the victim then fell to the floor with his spine severed" under the "Agent's Description of the Offense" section in the PSIR. Defendant argued, in relevant part, that Parker did not immediately fall and his spine was not severed, and noted that the medical expert testified at trial that Parker's spinal

cord had not been transected. Defendant expressed concern that this inaccurate information affected the trial court's scoring of OV 3 and OV 6. The trial court did not resolve the factual dispute, but indicated that it heard the trial testimony and had not relied on the agent's description of the offense when scoring the sentencing guidelines.

Defendant is not entitled to resentencing because the trial court explicitly indicated that, in determining defendant's sentence, it was not relying on any of the information in the PSIR that defendant challenged as inaccurate. If the challenged information did not affect the sentencing decision, resentencing is not required. *People v Thompson*, 189 Mich App 85, 88; 472 NW2d 11 (1991). However, because the trial court specifically indicated that it would not rely on certain information in the PSIR, such information is irrelevant, and defendant is therefore entitled to have it stricken from the PSIR. See *People v Taylor*, 146 Mich App 203, 205-206; 380 NW2d 47 (1985). By failing to strike the information, the trial court erred. The proper remedy is "remand for the challenged parts of defendant's presentence investigation report to be stricken." See *id*. at 206.

## 2. UNPRESERVED CLAIMS

Defendant raises other challenges to the accuracy of the PSIR that he did not raise below. We therefore review these unpreserved claims for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 752-753, 763-764; 597 NW2d 130 (1999).

Defendant takes issue with the accuracy of additional information under the Agent's Description of the Offense. He first challenges the statement that "Bruce Ma[ssey] went to visit the victim and had to force entry into the home[.]" Defendant does not argue that there was a discrepancy that Massey gained entry by force, only that "Massey's statement or testimony does not state he had to force entry in the house." Defendant, himself, recognizes that Parker testified "under oath" that Massey had forced his way inside. The fact that defendant believes that Parker's testimony in this regard was "false" is unavailing. Defendant also challenges the statement that, after being stabbed on August 1, 2011, Parker "was transported to two separate hospitals and on May 10, 2012, he died." Defendant apparently faults the author mentioning defendant being transported to two hospitals in tandem, which, defendant claims, suggests that Parker "was injured far worse than he actually was . . . ." At trial, there was evidence that defendant stabbed Parker on August 1, 2011, and that, because of the resulting injuries and complications from being stabbed, defendant was ultimately admitted to two different hospitals. In fact, defense counsel stipulated to "a series of medical records for Daryl Parker from the moment he was admitted to Henry Ford Hospital to the point in which he expired at Detroit Receiving Hospital." Thus, the author's account is not inaccurate. That defendant prefers it stated differently is not an effective challenge, let alone plain error.

Lastly, under the "Criminal Justice" "Adult History" section, defendant challenges the accuracy of two of seven listed offenses. The PSIR indicates that No. 3 of 7 was committed in Terrell (Texas) on March 13, 1984, that defendant was arrested on that date, and, on April 4, 1984, he was convicted by plea and sentenced to 15 years in prison; the discharge date is unknown. No. 4 of 7 indicates that defendant was arrested on March 14, 1984, by the Springhill Police Department (Illinois), and the final charges, conviction method, and disposition are all "unknown." Defendant argues only that, given the close proximity of two arrest dates, March 13

and 14, he "couldn't possibly be in Texas and Illinois at virtually the same time." However, this mere statement, unsubstantiated, does not show that the listed offenses are inaccurate to rebut the presumption that the information is accurate. *Carines*, 460 Mich at 763-764.

Affirmed and remanded for the limited purpose of striking from defendant's presentence investigation report the information challenged by defendant and disregarded by the trial court at defendant's resentencing hearing in accordance with this opinion. We do not retain jurisdiction.

/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Cynthia Diane Stephens